UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tasha Edens,<br><br>    Plaintiff,<br><br>    v.<br><br>Commissioner of Social Security Administration<br><br>    Defendant.<br>_____/ | No. C 09-4023 JL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT (Docket # 21)** |

**I. Introduction**

Defendant filed a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) on the grounds that the Court committed clear error by misinterpreting the terms of the administrative law judge's ("ALJ") residual functional capacity (RFC) finding and thereby finding that the ALJ erred, and also committed clear error in regard to the appropriate remedy that the Court found. The Court finds this matter suitable for decision without oral argument as provided by Civil Local Rule 7-1(b). The Court carefully considered the moving and opposing papers and the record in this case and hereby DENIES the motion.

**II.     Factual Background**

In March of 2006, Tasha Marie Edens, ("Plaintiff"), applied for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI, respectively, of

the Social Security Act ("Act"). She was born in July of 1983, making her almost 23 years old when she applied for these benefits. She was home taught by her stepmother and father until she was 13, when she went to live with her grandparents (Tr.27). Plaintiff's grandmother, Elaine Edens ("Mrs. Edens"), stated that Plaintiff was abused in various ways during the time that she lived with her parents (Tr.27). In fact, Plaintiff received compensation in the form of payment for mental health services from the State of California's Victim Compensation fund as the victim of willful cruelty to a child. (Tr. 144-146, 147-150). In addition to earning her GED, she completed an accounting class but did not pursue any further education due to her reliance on her grandmother's assistance in reading through the books (Tr.12). Plaintiff testified that she lived with her grandparents and performed household chores, including mowing the lawn, sweeping, dusting, cleaning the house, feeding the dog, picking up branches in their vineyard, and shopping for groceries (Tr. 46, 11 & 18). Plaintiff's grandmother testified that Plaintiff would do chores, but often had to be reminded (Tr. 51-52). Mrs. Edens further testified that Plaintiff did not like to be in large groups of people because they would often make fun of Plaintiff (Tr. 53-57).

Plaintiff worked at a café that was small and patronized by regular customers (Tr.6). Plaintiff worked there for 8-9 months (Tr.33) performing small tasks which would normally be performed by a hostess, waitress, busser, and dishwasher (Tr.5-6).

Mrs. Edens testified that Plaintiff's coworkers at Safeway were unkind to her, and that Plaintiff did not want to continue to work there (Tr. 60-61). Her work at Safeway lasted 4 months (Tr.7), until she was put on medical leave due to her inability to cope with the social setting of the work environment (Tr.33).

Plaintiff's work as in-home support for an elderly person lasted about 4 months. During that time she would act as a driver and make light meals (Tr.7-8). Plaintiff stated at the hearing that she had not maintained any profitable employment since December 15, 2005 (Tr.10).

1    Plaintiff smoked marijuana, but had a license to do so (Tr. 20).  She stopped
2 smoking as a requirement set by her grandparents to remain living in their home (Tr. 16).
3 She took methamphetamines in the past, and cocaine, and would also attend parties, but
4 stopped those activities three years prior to the hearing (Tr. 17).  Plaintiff and her
5 grandmother also stated that she was not a drinker (Tr.17 and 26).
6    Plaintiff stated that she gets panic attacks and begins sweating profusely when near
7 confrontations (Tr.15, 42-43 ).  She also stated that she has trouble sitting for long periods
8 of time, depending on the circumstances (Tr. 18).  Plaintiff's grandmother stated that she
9 noticed a depressive pattern when Plaintiff was about 15 years old (Tr. 28).  She said that
10 Plaintiff would spend a great deal of time sleeping, did not leave the house often, and felt
11 uncomfortable in a crowd (Tr. 29-30).

### A.    Medical History

13    In July 2006, following Plaintiff's application for benefits, Les P. Kalman, M.D., a
14 psychiatrist, examined Plaintiff (Tr. 266-69). Plaintiff told Dr. Kalman that she drove herself
15 to the appointment, and that she suffered from depression and social anxiety (Tr. 266).
16 Plaintiff explained that she had been physically and mentally abused by her father and
17 stepmother (Tr. 266). She stated that she worked part time for about three months as in
18 home support for an elderly person (Tr. 267).
19    Dr. Kalman observed that Plaintiff was cooperative, remained alert during the
20 examination, and made good eye contact (Tr. 267-68). Plaintiff was able to interpret
21 proverbs and perform basic calculations, and showed intact memory and fair insight and
22 judgment (Tr. 267-68). Her thoughts were logical and goal directed, but Plaintiff stated that
23 she heard the thoughts of other people who were "saying bad things about [her]" (Tr. 268).
24 Plaintiff stated that she cooked, cleaned, shopped, paid bills, and took care of her own
25 personal hygiene and other needs (Tr. 268). She stated that she had no friends, but got
26 along with her grandparents (Tr. 268).
27    Dr. Kalman diagnosed Post-Traumatic Stress Disorder (PTSD) and depressive
28 disorder, and assigned Plaintiff a Global Assessment of Functioning (GAF) of 45 (Tr. 268).

A GAF score of 41-50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), 32.

Dr. Kalman opined that Plaintiff would be able to work if she were limited to simple, 1-2 step tasks and one-on-one interactions (Tr. 268). He stated that Plaintiff could not deal with supervisors or coworkers or the general public other than one-on-one (Tr. 268).

Four months later, State agency psychiatrist H.M. Skopec, M.D., reviewed Plaintiff's records (Tr. 271-84). Dr. Skopec noted that Plaintiff had several moderate limitations, and a marked limitation in dealing with the public (Tr. 271-72). He further found that Plaintiff had mild restrictions in activities of daily living, moderate limitations in maintaining concentration, persistence, and pace, and moderate limitations in social functioning (Tr. 282). Dr. Skopec concluded that Plaintiff could perform simple repetitive tasks and should not work with the public (Tr. 273). Five months later, State agency psychiatrist L.O. Mallare, M.D., reviewed Plaintiff's records and agreed with Dr. Skopec's assessment (Tr. 326).

### B.  Procedural History within the SSA

In March 2006, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI, respectively, of the Social Security Act ("Act") (Tr. 122-33). The Commissioner denied Plaintiff's applications both initially and again on reconsideration (Tr. 81-84). Plaintiff then requested a hearing before an administrative law judge (ALJ) (Tr. 103). On July 23, 2008, an ALJ presided over a hearing on the issue of whether Plaintiff was disabled as defined by the Act (Tr. 29-80).

After reviewing all of the evidence, the ALJ evaluated Plaintiff using the five-step sequential evaluation per 20 CFR §§ 404.1520; 416.920. At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability (Tr. 21). At step two and three, he found that Plaintiff had severe impairments of "anxiety disorders and polysubstance abuse", but that they did not meet or equal any of the presumptively disabling listed impairments (Tr. 22-23). At step four the ALJ

determined that Plaintiff could not perform her past relevant work as a waitress (Tr. 24-25). At step five, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, but that she must avoid concentrated exposure to dust, fumes, and other irritants; that she could perform simple repetitive tasks, but could not interact with the general public; and could interact with specific customers only on a one-to-one basis (Tr. 23). Relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy (Tr. 25-26). On that basis, the ALJ concluded that Plaintiff was not disabled as defined by the Act (Tr. 26).

Plaintiff next requested and obtained a hearing of her appeal before a different ALJ, where she testified and the ALJ took evidence from witnesses. (Tr. 31-80). When the Appeals Council saw no basis to disturb the ALJ's decision, the ALJ's decision became the Commissioner's final decision (Tr. 357-60).

**III. District Court History**

On August 28, 2009, after exhausting her administrative remedies, Plaintiff commenced an action for judicial review from this Court. 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff sought either: 1) summary judgment in favor of Plaintiff, with the Court "modifying ... the decision of the Commissioner ... without remanding the cause for a rehearing" (42 U.S.C. § 405(g)), and holding that Plaintiff was "disabled," plus ordering Defendant to effectuate that holding; or 2) remand, with directions to Defendant to adjudicate in additional administrative proceedings. Defendant moved for summary judgment in this case to affirm the Commissioner's final decision.

After review of the administrative record and both parties' motions for summary judgment, this Court granted summary judgment for Plaintiff on October 08, 2010, finding that Defendant failed to carry the allocated burden of proof at step five of the sequential analysis, and ordered that the matter be remanded back to the agency for payment of benefits. Following that order, Defendants filed a timely Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e).

### IV. Analysis

#### A. Legal Standard for Relief under Fed. R. Civ. Pro. 59(e)

"There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is "necessary to correct manifest errors of law or fact upon which the judgment is based;" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law." *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (emphases and citations omitted).

#### B. Did this Court err in finding that Defendant failed to carry the allocated burden of proof?

Defendant argues that this Court committed manifest error by finding that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles, and that the vocational expert's testimony did not provide a basis for finding that Plaintiff was not disabled. Defendant suggests that the Court misunderstood the ALJ's hypothetical question to the vocational expert, as well as the terms of the ALJ's RFC finding. This Court reviewed the administrative record and the previous order and continues to hold that Defendant failed to sustain the burden of production and proof required in step five of the sequential analysis.

Defendant argues that this Court misunderstood the ALJ's hypothetical RFC as limiting Plaintiff to one-to-one contact to any person, and the ALJ's hypothetical RFC actually only limited Plaintiff to one-to-one contact with the public, and did not restrict her ability to work with coworkers or supervisors (Tr. 23). The ALJ's hypothetical RFC stated that the individual "can have no interaction with the public" and "would be able to interact with specific clients on a one to one basis" (Tr. 68). When the vocational expert asked for clarification regarding the meaning of the term "public", the ALJ responded that the

individual could not work in a place in which the public could approach her impromptu (Tr. 68-69). The ALJ further clarified that the individual could work in a job where she had been introduced to a particular person who was previously unknown to her but since that introduction the person would no longer be a member of the public, and that relationship could continue but *only* one person at a time" (Tr. 69) (emphasis added).

      Whether the ALJ meant for the hypothetical RFC to restrict one-on-one interactions only with clients and not with all people in general is not material to the outcome of this motion. Putting that issue aside, the vocational expert's testimony was still erroneous in that the jobs specified did not meet the terms of the RFC. The vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles for two reasons. First, the transcript shows that the ALJ asked the vocational expert to assume an individual who could not work with the general public, but could handle one-on-one interaction with specific clients (Tr. 68-69). The vocational expert testified that such an individual could work as an assembler (Tr. 70-71). When the ALJ asked if an assembler could do this "by herself, or would she have to deal with other people?" the vocational expert responded "there would be other people in the room but she doesn't have to have any contact with them" and then stated that as an assembler, Plaintiff would not need to interact with anyone other than on a one to one basis (Tr. 70). However, one of the specified jobs, small products assembler (Dictionary of Occupational Titles # 706.684-022) includes the following demands ". . . frequently works at bench as a member of assembly group assembling 1 or 2 specific parts and passing unit to other worker." Working frequently as a member of a group is not one-on-one. This is contradictory to the vocational expert's testimony that someone working as an assembler would not have to "have any contact" with the other people that would be in the room (Tr. 70) and is contrary to the hypothetical RFC posed by the ALJ. Thus the vocational expert's testimony regarding the specified job was inconsistent with the Dictionary of Occupational Titles.

      The second inconsistency was with the range of tasks required by the specified jobs. The hypothetical RFC included limits to "constant, simple, repetitive tasks" (Tr. 68). But two of the specified jobs in the vocational expert's response, small parts assembler and

production assembler, both include changing tasks and more than simple repetitive tasks. A small parts assembler "may be assigned to different work stations as production needs require" and require a "combination" of tasks (Dictionary of Occupational Titles 706.684-022). A production assembler "may work on a line where tasks vary" such as tending to machines, perform force fitting or fastening operations, or perform repetitive bench or line assembly operations (Dictionary of Occupational Titles 706.687-010). Therefore these specified jobs do not meet the requirements of the hypothetical RFC.

Accordingly, this Court finds that the ALJ did not meet his burden of production or proof of showing that other work existed, and erred in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy. Because no specific jobs were named that actually were consistent with the RFC found, the Court cannot affirm the ALJ's finding at step five.

In his RFC finding, the ALJ found that the Plaintiff had a restriction of "no interaction with general public but can interact with specific customers on a one-to-one basis" (Tr. 23). It is noteworthy that in this finding, the ALJ failed to follow the recommendation of Dr. Kalman that Plaintiff was "not able to deal with supervisors and co-workers and not able to deal with the public." (Tr. 268). Indeed, there is ample evidence in the record, including Plaintiff's own testimony and testimony of her grandmother, that shows Plaintiff gets panic attacks and is unable to function in a setting where there is more than one person in the room, regardless if that person is a member of the public, co-worker, friend, or family member (Tr.43, 45, 47, 50, 53, 57-58, 66). The ALJ mentions Dr. Kalman's observation, but does not explain why he chose not to incorporate it into the RFC.

**C. Did this Court err in ordering remand for payment of immediate benefits?**

Defendant asks this Court to alter or amend its judgment on the grounds that remand for payment of benefits is appropriate in only the "rare" cases, and that it is inappropriate in this case. However, under statute and case law, this Court has discretion to modify, with or without remanding (42 U.S.C. § 405(g)), and to order an award of benefits. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

Defendant argues that remand for calculation of benefits is inappropriate where the error lies in the ALJ's reliance on incorrect vocational expert testimony, because further development in a case would serve some useful purpose.  Defendant is correct that remand for further administrative proceedings is appropriate in cases where enhancement of the record would be useful.  *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).  Conversely, where remand for further administrative proceedings would serve no useful purpose, the district court should remand for immediate award of benefits.  *Benecke*, 379 F.3d at 593 (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  In this case, the record is fully developed, thus remand for further administrative proceedings would serve no useful purpose and this Court's remand for immediate award of benefits is appropriate.  *Id.*  As discussed above, Plaintiff first applied for Disability Insurance Benefits and Supplemental Security Income in March 2006.  Over the last five years, the administrative record has been fully developed and includes sufficient medical and procedural history to sustain a final determination.

Despite the complete record, Defendant argues there is an outstanding issue to resolve, specifically, whether there are other jobs that Plaintiff could perform, such as housekeeping.  After re-reviewing the transcript from the hearing, this Court disagrees. The ALJ and vocational expert discussed housekeeping at the hearing (Tr. 73-76), but in his actual findings, the ALJ only listed assembler positions and did not mention housekeeping (Tr 25).  During the hearing, the ALJ presented a second hypothetical question to the vocational expert involving an individual who could not deal with more than one co-worker and one client in the room at the same time, and the vocational expert testified that such an individual could not do any of the assembler jobs (Tr. 71). A discussion between the ALJ and the vocational expert then follows regarding housekeeping positions, but the vocational expert never provided an occupational title number. The vocational expert testified that light unskilled housekeeper positions would include work at a restaurant or in a club where the Plaintiff would encounter members of the public (Tr. 74).  She also testified that although Plaintiff's serving as a housekeeper in a private household would limit general public interaction, there would be a possibility that any number of people could be at home at any

given time (Tr. 75), thus a private housekeeper would not fit within the second hypothetical RFC. The vocational expert explained that it would be difficult to determine the number of housekeeper positions available in the Bay Area because there would be no subgroup where the employee would have no contact with the public (Tr. 74-75). The vocational expert also discussed the possibility of night cleaning at doctors' offices, but provided no occupational title number and was not able to provide information regarding how many positions would be available in the Bay Area. When Plaintiff's attorney asked whether Plaintiff would be able to do any private household or custodial jobs if she were unable to deal with either supervisors and coworkers, the vocational expert testified that she would not (Tr. 78). The ALJ did not ask any further questions to explore how a night housekeeper would or would not fit into the hypothetical RFC.

Both Plaintiff and Defendant discuss the applicability of *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990) to this case. This Court finds the facts of that case distinguishable from this one. In *Terry*, the claimant was 64 years old, and because of her advanced age, she would be found disabled even if her acquired skills made her highly marketable. *Terry*, 903 F.2d at 1279-80 (relying on a now-obsolete regulation). The court in *Terry* noted that it was unlikely that the ALJ would be able to establish that the claimant's skills made her "highly marketable" in further proceedings and invoked its discretion to order payment of benefits. See *id.* at 1280. Here, the Plaintiff is young and this Court's decision to award immediate payment of benefits is not related to her age.

In cases before and after *Terry*, including *Distasio v. Shalala*, 47 F.3d 348, 649-350 (9th Cir. 1995); *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) the Ninth Circuit held that where the burden of proof has shifted to Defendant at step five and Defendant has failed to sustain the burden - the Court has discretion to order an immediate award of benefits. Here, the burden of proof shifted to the Defendant at step five and Defendant failed to meet that burden. This Court therefore has discretion to order an immediate award of benefits.

**V. Conclusion**

1 | The Court carefully considered the moving and opposing papers and the record in
2 | this case.  For the reasons set forth above, this Court finds that it did not err in its October
3 | 8, 2010 order finding that the ALJ failed to carry the allocated burden of proof and
4 | remanding this matter to the Agency for payment of benefits.  Accordingly, the Court
5 | hereby denies the motion to alter or amend judgment.  The matter is hereby remanded to
6 | the Agency for payment of benefits.  Judgment shall be entered for Plaintiff.  The Clerk
7 | shall close the file.

DATED: April 19, 2011

_____
James Larson
United States Magistrate Judge

G:\JLALL\CASES\CIVIL\09-4023\Order Deny 21.wpd